UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ASHTEN JAY RICHARDSON, <br><br> Plaintiff, <br><br> v. <br><br> LEXIS NEXIS RISK SOLUTIONS, INC., <br><br> Defendant. | Case No.: <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Ashten Jay Richardson ("Plaintiff" or "Mr. Richardson") brings the following Complaint and alleges the following based upon Plaintiff's personal knowledge, information and belief, and the investigation of counsel.

## INTRODUCTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. As alleged in detail below, Defendant furnished a report to Plaintiff's prospective employer, Precision Point Frederick ("Precision Point"), containing three types of inaccurate information:

    (a) Duplicative traffic violations and cases, resulting in 27 discrete records instead of 3;

1

  (b) An expunged misdemeanor criminal record that (i) should not have been reported to Plaintiff's prospective employer, and (ii) was inaccurately reported as a felony conviction;

  (c) An obsolete criminal charge that was dismissed in 2007.

## PARTIES

3. Plaintiff Ashten Jay Richardson ("Plaintiff") resides in Frederick, Maryland, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

4. Defendant LexisNexis Risk Solutions, Inc. ("LexisNexis") is a consumer reporting agency that maintains its principal place of business at 1000 Alderman Drive, Alpharetta, Georgia 30005. LexisNexis can be served through its registered agent C T Corporation System at 289 S Culver St Lawrenceville, GA 30046-4805.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## FACTS
### Plaintiff Applies for a Job with Precision Point

7. On or about March 10, 2025, Plaintiff applied for part-time employment as a Firearm Instructor with Precision Point, a position that offered flexible scheduling and hourly compensation of $25 per hour.

8. After reviewing his application, Precision Point management informed Plaintiff that his experience and qualifications as a certified firearm instructor made him an especially suitable candidate for the role.

9. On or about April 1, 2025, Precision Point Frederick extended a conditional job offer to Plaintiff, with the final hiring decision contingent upon the results of an employment background check.

**Microbilt Published an Inaccurate Background Check Report to Precision Point**

10. On or about April 3, 2025, Precision Point, through its contractor, ordered a criminal background check on Plaintiff from MicroBilt.

11. In fulfilling this request, MicroBilt obtained a consumer report containing public record data about Plaintiff from LexisNexis.

12. On or about April 3, 2025, in accordance with its standard practices, LexisNexis sold a consumer report to MicroBilt, which then compiled its own consumer report and provided it to Trinity Technology Group for use by Precision Point Frederick in evaluating Plaintiff's employment application.

13. Within that consumer report, Defendant published stigmatizing and inaccurate criminal record information that should have been excluded from the report.

14. Specifically, the consumer report included a record of a misdemeanor criminal case that had been expunged by court order dated March 2, 2021 (the "Expunged Case").

15. To make matters worse, the Expunged Case was reported as a felony when in fact it was a misdemeanor. Plaintiff is not a felon and has never been convicted of a felony in his life.

16. Additionally, Defendant reported a record of an arrest that antedated the report by more than seven years and did not result in a conviction (the "Obsolete Case").

17. Neither the Obsolete Case nor the Expunged Case should have appeared in Plaintiff's employment purposed consumer report.

18. Defendant also published duplicative records of traffic violations, making it appear as though Plaintiff had 23 distinct traffic related charges instead of three. The inaccurate duplicative traffic violations reported by Defendant include the following:

- Record #1: 0000001DV0DHH
- Record #2: 0000001DW0DHH
- Record #3: 0000001F10DHH
- Record #4: 0000001F20DHH
- Record #5: 0000001F30DHH
- Record #6: 0000001F40DHH
- Record #7: 0000001F50DHH
- Record #8: 0000001F60DHH
- Record #9: 0000001FC0DHH
- Record #10: 0000001DX0DHH
- Record #11: 0000001DY0DHH
- Record #12: 0000001DZ0DHH
- Record #13: 0000001F00DHH
- Record #14: 0000001F70DHH

- Record #15: 0000001F80DHH
- Record #16: 0000001F90DHH
- Record #17: 0000001FB0DHH
- Record #18: 00000004G0SMY
- Record #19: 00000004H0SMY
- Record #20: 00000004J0SMY
- Record #21: 00000004K0SMY
- Record #22: 00000004L0SMY
- Record #32: No Case number, the same file date, and the offense name

19. The Expunged Case, the Obsolete Case, and the Duplicative Charges were improperly included on Plaintiff's background check because Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information they published within the consumer report they sold about Plaintiff to Precision Point.

20. Had Defendant followed reasonable procedures, it would have discovered that Plaintiff has never been a serial traffic violator, and that the reported conviction for Assault on Peace Officers and Others had been expunged by court order in 2021. Defendant would also have discovered that the remaining criminal entries were either dismissed, legally obsolete, or grossly misrepresented.

21. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to MicroBilt inaccurate criminal records, who in place published the received information to Plaintiff's prospective employer, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

2

**Precision Point Frederick Denies Plaintiff's Job Application**

22. On or about April 9, 2025, the manager of Precision Point informed Plaintiff that his background check had not cleared and that Precision Point had serious concerns about issues revealed on the consumer report.

23. Troubled by this news, Plaintiff requested a copy of the report.

24. Upon receiving and reviewing the report, Plaintiff was devastated to learn that not only had the background check falsely portrayed him as a convicted felon, but the contents of the report had also been shared by the Human Resources manager with others at the company, further compounding Plaintiff's embarrassment, humiliation, and reputational harm.

25. On or about April 10, 2025, Plaintiff received his own official copy of the background report and was shocked and distressed to see it contained the Expunged Case, even though the record had been expunged for over four years. He was even more distressed to learn that the Expunged Case was inaccurately reported as a felony, instead of a misdemeanor.

26. Plaintiff immediately notified Precision Point that the consumer report was riddled with errors, explaining that the charges reported therein were expunged, dismissed and/or duplicative, and should not have been included on the consumer report.

27. Plaintiff expressed that he was panicked, confused, and deeply concerned not only about the risk of losing the opportunity with Precision Point, but also about the potential long-term consequences that such inaccurate criminal reporting could have on his future employment.

28. On April 10, 2025, Plaintiff received a Pre-Adverse Action Notice ("AAN") in email form from Precision Point, notifying him that it was considering taking adverse action based on the results of the consumer report.

29. The AAN made clear that Precision Point was considering withdrawing its conditional offer of employment due to the criminal records listed in the report records.

**Plaintiff Disputed Misinformation in the Consumer Report**

30. On April 11, 2025, at 8:54 am, Plaintiff submitted a formal dispute to MicroBilt using Microbilt's Consumer Dispute Form via email.

31. In his dispute, Plaintiff specifically identified the criminal records in the report, explained that the charges were inaccurate because they were expunged, obsolete, dismissed, and/or duplicative, and asked Microbilt to investigate and correct its reporting.

32. At 5:19 pm that same day, Microbilt advised Plaintiff that it completed its investigation and mailed the results to Trinity (Precision Point's contractor) via USPS.

3

33.     By letter dated April 11, 2025, Microbilt responded to Plaintiff's dispute, stating that it had removed the Expunged Case, and forwarded the balance of the dispute to LexisNexis for further investigation.

34.     Precision Point did not reinstate its conditional job offer to Plaintiff.

35.     But for Defendant's inaccurate consumer report, Plaintiff's job offer would have proceeded to a hiring action, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's erroneous reporting.

36.     Defendant's false report cost Plaintiff a promising, well-paying job with Precision Point.

37.     Plaintiff is the primary income earner in his household. He supports his wife, a 10-year-old son for whom he pays child support and provides weekend care, and an adult daughter. The wrongful publication of a background report falsely labeling him as a felon and serial offender interfered with his ability to secure employment and meet his financial obligations.

38.     The report's contents were not only inaccurate but were improperly shared within the workplace by the HR manager at Precision Point. As a result, multiple employees, including individuals Plaintiff had previously trained as a certified firearm instructor believed that Plaintiff was a felon, leaving Plaintiff feeling humiliated, disrespected, and professionally degraded.

39. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; out of necessity, Plaintiff paid for an independent background check through Checkr, incurring personal expense to prove the consumer report was materially inaccurate; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## COUNT I
### Violations of 15 U.S.C. § 1681e(b)

40. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

41. Defendant is "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

42. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

43. The above-mentioned consumer reports were "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

44. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

45. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; out of necessity, Plaintiff paid for an independent background check through Checkr, incurring personal expense to prove the MicroBilt report was materially inaccurate; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

46. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

47. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681(a)
### Failure to Exclude Adverse Obsolete, Non-Conviction Information

48. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

49. Within its consumer report about Plaintiff, Defendant failed to exclude at least one adverse record which antedated the report by more than seven years

50. The record that Defendant published - a non-conviction record – which antedated the report by more than seven years, is information that Congress deemed to be obsolete and for that reason, should be excluded from consumer reports.

51. Defendant knew or had reason to know that it was prohibited by the FCRA from publishing the adverse information and should have excluded it because it was a non-conviction record which antedated the report by more than seven years

52. Defendant violated 15 U.S.C. § 1681c(a)(5) by reporting an adverse and non-conviction record that antedated the report by more than seven years.

53. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and

advancements in the future; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; embarrassment.

54. Defendant willfully violated 15 U.S.C. § 1681c(a) in that their conduct, actions, and inactions were willful, rendering Defendant liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

55. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## DEMAND FOR JURY TRIAL

56. Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment:

(i) determining that Defendant negligently and/or willfully violated the FCRA;

(ii) awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

(iii) awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and

(iv) granting further relief, in law or equity, as this Court may deem appropriate and just.

Dated: July 8, 2025

By:<u>*/s/ Moshe Boroosan*</u>
Moshe Boroosan, GA Bar #744128
CONSUMER ATTORNEYS, PLLC
68-29 Main Street
Flushing NY 11367
T: (718) 887-2926
F: (718) 247-8020
E: mboroosan@consumerattorneys.com

*Attorneys for Plaintiff,*
*Ashten Jay Richardson*
